**BAMDAD MECHANIC CO., LTD., et al., Plaintiffs,**

v.

**UNITED TECHNOLOGIES CORP., et al., Defendants.**

**Civ. A. No. 83–182 MMS.**

United States District Court, D. Delaware.

May 2, 1984.

Irving Morris, and Kevin Gross, Morris & Rosenthal, P.A., Wilmington, Del., of counsel: John H. Boone, Geoffrey P. Knudsen, and Michael R. Davisson, Boone, Knudsen & Martin, P.C., San Francisco, Cal., for plaintiffs.

William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., James J. Garrett, Rochelle D. Alpert, and Richard G. Seeborg, Morrison & Foerster, San Francisco, Cal., for defendants.

OPINION

MURRAY M. SCHWARTZ, District Judge.

This contract dispute arose out of logistical difficulties generated by the 1978 revolution in Iran. The individual plaintiffs, Khosro Y. Jobrani and Parviz Jobrani, are both Iranian citizens who currently reside in California. The Jobrani brothers are the sole shareholders and directors of Bamdad Mechanic Co., Ltd. ("Bamdad"), an Iranian corporation and the corporate plaintiff in

this action. Plaintiffs have named as defendants United Technologies Corp. ("UTC") and two UTC subsidiaries, United Technologies International, Inc. and United Technologies International Operations, Inc. All three defendants are incorporated in Delaware and maintain their principal places of business in Hartford, Connecticut.

Defendants moved to dismiss plaintiffs' complaint on four grounds. During oral argument it became apparent that, in light of plaintiffs' amendment of their complaint, only two grounds for dismissal remained viable.[1] The remaining issues are 1) whether plaintiffs' cause of action is barred by the applicable statute of limitations and 2) whether plaintiffs' claims against defendant UTC are barred on the ground of res judicata.[2] Affidavits were submitted by both sides on the statute of limitations issue and the Court advised counsel at oral argument that it would treat defendants' motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b). Because the Court holds that all claims are barred by the statute of limitations, it will not address the res judicata question.

The facts underlying the contract dispute are unimportant for purposes of the present motion. In brief summary, according to plaintiffs' allegations, defendants engaged plaintiffs to construct an electric generating plant in Isfahan, Iran. Plaintiffs pledged money and assets worth $1.16 million as a performance guarantee which, upon completion of the project, were to be released by the defendants. Plaintiffs allege that after the construction was sub-

stantially completed defendants refused to pay for the completed work and failed to release the pledged assets. The assets were ultimately seized by the Iranian government. In a four count complaint plaintiffs allege: 1) breach of contract, 2) breach of covenant of good faith and fair dealing, 3) breach of an implied contract that defendants would assist plaintiffs to liquidate their assets and leave Iran if the political situation deteriorated, and 4) intentional and negligent misrepresentation that defendants would pay plaintiffs if they continued to work on the project.

The parties agree that this action is governed by Delaware's three-year statute of limitation for actions based on contract or misrepresentation, 10 *Del.C.* § 8106. (*See* Dkt. 6 at 11; Dkt. 13 at 15; Dkt. 18 at 60). Although the parties disagree about when plaintiffs' cause of action accrued, plaintiffs concede that the latest possible date was in September, 1979. (Dkt. 18 at 60). Suit was filed on March 31, 1983, past the three-year limitation period. Plaintiffs argue, however, that defendants waived their statute of limitations defense by agreement. They rely on two letters, dated December 1, 1982, and February 25, 1983, sent by W. Harmon Leete, counsel for UTC's Power Systems Division, to John H. Boone, counsel for plaintiffs, in which Leete apparently agreed to temporarily extend certain statutes of limitations.[3]

Defendants recognize that if these letters, as plaintiffs contend, constitute valid extensions of the Delaware three-year statute of limitations, then the present action was timely filed. Defendants argue, how-

---

**1.** Defendants argued in their motion to dismiss that the Court lacked diversity jurisdiction, but conceded at oral argument that plaintiff's amendment cured this defect. (Transcript, Dkt. 18 at 62). Defendants also argued that under Delaware law the individual plaintiffs lacked standing to assert claims alleging injury to the corporation. The individual plaintiffs, however, alleged in their amended complaint that they are proceeding only as assignees of Bamdad (*Id.* at 37–38) and defendants conceded that at the present time they are unprepared to contest the validity of the alleged assignment. (*Id.* at 31, 37).

**2.** Plaintiffs lost a previous action against defendant UTC in the Northern District of California. *Bamdad Mechanic Co. v. U.T.C.,* No. 83–1592 (N.D.Cal. August 24, 1983) (order granting UTC's motion for summary judgment). Plaintiffs agree that if normal principles of res judicata applied in this action all of their claims against UTC would be barred (Transcript, Dkt. 18 at 48–52), but argue that res judicata should not apply because plaintiffs were denied the opportunity for discovery before their California action was decided.

**3.** The letters are set out in full *infra* at 554–555.

ever, that the letters do not evidence an intent to extend the Delaware statute of limitations. They argue further that even had the defendants agreed to extend the Delaware statute, such an agreement would not act as a waiver or estoppel because by December 1, 1982, the date of the first letter, the Delaware statute had already run.

As explained below, the Court disagrees with defendants that a party may not, by agreement, waive his statute of limitations defense after the statute has already run. The Court agrees with defendants, however, that in this case the parties intended to extend only those statutes of limitations that had not yet run.

**Waiver After Action is Barred**

■■■ A statute of limitations defense is a personal one which may be waived by a defendant. *See Leavy v. Saunders*, 319 A.2d 44, 47 (Del.Super.1974); *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1222–24 (1950) (hereinafter cited as "Developments"). Thus, if a party fails properly to plead the statute as a defense he will be unable later to assert it. *Van Sant v. American Express Co.*, 169 F.2d 355, 372 (3d Cir.1948); *Leavy v. Saunders*, 319 A.2d at 47. Furthermore, if a defendant by his words or actions induces a plaintiff to forego bringing suit within the proper time, he will be estopped from pleading, or will be deemed to have waived, the statute of limitations defense.[4] *See Developments* at 1222–24.

While recognizing this general rule, defendants argue that once an action is already barred by the passage of time, a defendant's promise to waive the statute will not preclude his assertion of the statute as a defense.

The Court cannot agree with so broad a rule. Many courts have stated, generally, that once the time to bring suit has run a defendant's promise not to assert his limitations defense will not create a waiver or estoppel. *See e.g. Monarch Industrial Corp. v. American Motorists Insurance Co.*, 276 F.Supp. 972, 979 (S.D.N.Y.1967); *Cardente v. Travelers Insurance Co.*, 112 R.I. 713, 315 A.2d 63, 65–66 (1974); *Wilkinson v. Bennett*, 442 S.W.2d 166, 170 (Mo. App.1969); *Trask v. Weeks*, 81 Me. 325, 17 A. 162, 163 (1889); *see generally Developments, supra* p. 4, at 1224; Annot., 43 A.L.R.3d 756, 760, 766–67 (1972); *but see Union Bank of Switzerland v. HS Equities, Inc.*, 457 F.Supp. 515, 520–21 (S.D.N.Y.1978) (discussed *infra* at 554 n. 6). The general statements in these cases do not, however, erect a per se rule against the validity of waiver agreements entered into after the running of a statute. These cases, instead, can be explained as involving a particular failure of consideration or lack of detrimental reliance. For example, in *Trask v. Weeks*, 81 Me. 325, 17 A. 163 (1889), an agreement to waive the statute of limitations was made after the statute had run. The court held that this agreement could not "operate as an estoppel, for, having been entered into after the statute of limitations had taken effect, there is *no evidence in the case* that the plaintiff, in consequence of it, has been induced to change his position, so as to lose any legal

---

4. The terms "estoppel" and "waiver," as one commentator has explained, have been used by courts indiscriminately to refer to the consequences of a defendant's promise not to plead the statute:

> While the two are not easily distinguishable, generally language of waiver is more likely to be used if the transaction resembles a contract, and language of estoppel if the emphasis is more on the plaintiff's reasonableness in relying than on the binding effect of the promise.

*Developments, supra* p. 553, at 1223 (footnotes omitted).

The commentator elsewhere explains:

> If an express promise not to sue is given in return, usual contract principles can explain the result. Similarly, if there is no promise not to sue, but the promise not to plead is given to induce this forbearance, the forbearance which in fact results will make the agreement enforceable. Sometimes courts have termed this promissory estoppel, but in fact the reliance is bargained for.

*Id.* at 1223–24 n. 380 (citations omitted).

The Court will not attempt to choose between the terms "estoppel" and "waiver." Under either a waiver (contract) theory or an estoppel theory, defendants' position is untenable.

rights by delay or otherwise." *Id.,* 17 A. at 163 (emphasis added). The *Trask* court explained further that the defendant's promise not to assert the statute lacked consideration and was therefore unenforceable as a contract. *Id.* The *Trask* court thus apparently assumed that *if* a plaintiff provided independent consideration for a promise not to assert the statute, or *if* he detrimentally relied on such a promise, the defendant could not raise the statute as a defense even though the statute had run at the time of the promise.

Other courts have recited in dictum the rule that, to be effective as an estoppel or waiver, a promise not to plead a statute of limitations must occur before the statute has run. *See Monarch Industrial Corp. v. American Motorists Insurance Co.,* 276 F.Supp. at 979; *Mann v. Cooper,* 2 App. D.C. 226, 238 (1894); *Warren v. Walker,* 23 Me. 453, 458–59 (1844); *Gaylord v. Van Loan,* 15 Wend. 308, 310 (N.Y.1836).[5] These courts, however, addressed only the ordinary circumstance in which a party has delayed institution of his lawsuit in return for a promise not to assert a particular statute of limitation. Once that particular statute has run, there can be no detrimental reliance, and no benefit conferred on the defendant, by the plaintiff's delay of suit.

■ In this case, however, the plaintiffs allege that in return for a promise to waive *all* possible statutes of limitations—those that might have run and those that had not run—plaintiffs agreed to delay filing suit in all jurisdictions on all claims. Thus, according to plaintiffs' theory, plaintiffs did give consideration by delaying suit in return for defendants' alleged promise not to assert any statute of limitations defenses. Although no Delaware cases were found which address the question, the Court believes that the Delaware Supreme Court would bar a defendant from pleading a statute of limitations defense if he promised, in return for consideration, not to raise the statute even though the statute had already run.[6]

### Parties Intent

■ Although the Court has held that a promise by defendants to extend the statute of limitations could have barred their assertion of the defense in this case, the Court finds that defendants made no such promise. The December 1, 1982, letter reads:

Mr. John H. Boone
Boone, Knudsen & Martin
Russ Building, Suite 420
235 Montgomery Street
San Francisco, California 94104

SUBJECT: Claim of Bamdad Mechanic Company

Dear John,

Inasmuch as: (1) we are presently engaged in a joint effort to obtain information from Iran which may lead to an amicable settlement of the above claim; (2) this effort may not be completed until after the expiration of the statute of limitations applicable to the above claim; and (3) we are both interested in avoiding unnecessary litigation and have determined that this can be best accomplished

---

5. These courts gave only passing attention to the issue now before this Court. For example, in *Monarch* the court held that the defendant was barred from raising a statute of limitations defense, stating merely that he could waive the statute by exchange of letters "before the running of the statute." *Monarch Industrial Corp. v. Am. Motorists Ins. Co.,* 176 F.Supp. at 972. In *Mann v. Cooper* the court explained that a party may "for a valuable consideration, agree to waive or abandon the defense of the statute." *Id.* With such valuable consideration, the plaintiff may "insist upon the agreement as an estoppel." *Id.* In the case before it, the court explained, because the agreement was executed before the statute had run, the plaintiff's delay in bringing his action provided consideration for the promise. *Id.* Similar terse discussions appear in *Gaylord v. Van Loan,* 15 Wend. at 310 and *Warren v. Walker,* 23 Me. at 458–59.

6. The Court need not decide whether Delaware would hold a defendant to have waived the statute without consideration or detrimental reliance in return for his promise. One court has apparently gone this far, although the court did not discuss the general rule to the contrary. *See Union Bank of Switzerland v. HS Equities, Inc.,* 457 F.Supp. 515, 520–21 (S.D.N.Y.1978).

by a temporary waiver of the statute of limitations to permit completion of our settlement effort, United Technologies International, Inc., United Technologies Corporation, its subsidiaries, and affiliates hereby agree to waive and not to assert any applicable statute of limitations as a defense or bar to any law suit in respect to the above claim, provided such law suit is instituted on or before February 28, 1983.

Very truly yours,

UNITED TECHNOLOGIES CORPORATION

POWER SYSTEMS DIVISION

/s/ W. Harmon Lette

W. Harmon Lette

Division Counsel

The February 25, 1983, letter contains an agreement for a further extension:

Mr. John H. Boone

Boone, Knudsen & Martin

Russ Building, Suite 420

235 Montgomery Street

San Francisco, California 94104

SUBJECT: Claim of Bamdad Mechanic Company

Dear John,

Since the material which we jointly arranged to obtain from Iran is en route, but has not yet been received or evaluated, I have been authorized to waive the statute of limitations applicable to the above claim for one (1) additional month, by extending the date in the last line of my letter to you of December 1, 1982, from February 28, 1983 to March 31, 1983.

Very truly yours,

UNITED TECHNOLOGIES CORPORATION

POWER SYSTEMS DIVISION

/s/ W. Harmon Lette

W. Harmon Lette

Division Counsel

The language of the two letters, in the Court's view, can be read in only one way. *See Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 80 (3d Cir. 1979). The letters unambiguously demonstrate that defendants agreed only to extend the limitations periods for those statutes which might not yet have run. Defendants did not agree to extend the time to bring suit in those jurisdictions or for those claims which were already barred.

The December 1, 1982, letter expresses clearly that the parties' purpose in reaching an agreement to extend the limitation period was to avoid unnecessary litigation that might arise if plaintiffs were pressured into filing a lawsuit before settlement negotiations were completed. The letter definitively recites a specific concern that settlement efforts "may not be completed until *after the expiration* of the statute of limitations applicable to the above claim." (emphasis added). As a consequence of this concern, Mr. Leete agrees to an extension of "any *applicable* statute of limitations." (emhasis added). The February 25, 1983, letter grants an additional extension for the "applicable" statute of limitations.

 Plaintiffs would have the Court read "applicable statute of limitations" as referencing any statute of limitations, including those already run, that might ever have governed their claims against defendants. I do not believe the plain language of the letters can support that interpretation. Contracts should be given a reasonable and fair construction rather than one that leads to an unreasonable result. *Holland v. National Automotive Fibres*, 22 Del.Ch. 99, 194 A. 124 (1937). Plaintiffs' proposed construction would result in a commercially unreasonable contract; the Court can conceive of little reason for defendants to have agreed to abandon an absolute defense against time-barred claims. Furthermore, in construing a contract, the terms must be read as a whole to ascertain their true meaning. *See Sellon v. General Motors Corp.*, 521 F.Supp. 978, 983 (D.Del.1981); *State v. Dabson*, 217 A.2d 497, 500 (Del.1966); *Hudson v. D & V Mason Contractors, Inc.*, 252 A.2d 166, 169 (Del.Super.1969). Defendants would have the Court excise from the December letter the extensive recitations of intent that precede the letter's waiver clause.

These recitations plainly define the parties' purpose as avoidance of unnecessary litigation that might arise from the pressure of soon-to-expire statutes. With these recitations in mind, the Court finds that the language in the December and February letters unambiguously establish extensions only of statutes which had not yet run as of December 1, 1982.

 Plaintiffs have submitted two affidavits of John H. Boone in an attempt to support their interpretation of the two letter extensions. Under the parol evidence rule, however, extrinsic evidence is not admissible to vary the terms of an unambiguous contract. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir.1980); *Walsh v. Bailey*, 41 Del.Ch. 420, 197 A.2d 331, 333 (1964): *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 315 (Del.Super.1973). Furthermore, nothing in the Boone affidavits raises any ambiguity in the language of the December or February letters. Even though Boone knew the issue in contention in this litigation, he nowhere states in either of his affidavits that the parties agreed to a waiver of already expired statutes of limitations. Boone states in his October 8, 1983, affidavit that he discussed with Leete many potential "claims against the defendants on several theories of liability" (Dkt. 15, ¶ 4), and that Boone several times requested a letter waiving "any applicable statute of limitations." (*Id.*, ¶ 5). Boone attests that Leete never indicated "that defendants' waiver and extension of the limitations period was restricted to only certain of plaintiffs' claims." (*Id.*, ¶ 8). "Neither did we discuss," Boone states, "that plaintiffs would be limited to a particular state or forum in which they would bring their action." (*Id.*). Boone's supplemental affidavit, dated January 4, 1984, merely repeats that he requested from Leete a waiver of "all applicable statutes of limitation" and explains that the parties

did not have in mind "only a California statute of limitations." (Dkt. 20, ¶ 2).

These statements do not raise ambiguity in the language of the December and February letters. The Court has not interpreted Leete's letters as limiting plaintiffs to specific claims or specific jurisdictions. Instead, the letters have been interpreted as expressing an intent to waive *all* "applicable" statutes of limitations. All applicable statutes of limitations means all unexpired statutes of limitations relating to *any* claims in *any* jurisdictions.[7] This is entirely consistent with the Boone affidavits.

An order will be entered granting summary judgment for defendants.

---

**7.** The Court's interpretation of the letters is supported by W. Harmon Leete's affidavit of January 6, 1984, in which he states that he "intended only to agree to a temporary extension of the applicable statute of limitations which had not expired as of December 1, 1982." (Dkt. 19, ¶ 7).